# COURT OF APPEALS OF VIRGINIA

### Record No. 0071-25-2

WESTERN SURETY COMPANY
v.
KIMBERLY A. PINCHBECK, COMMISSIONER OF ACCOUNTS,
CIRCUIT COURT, CITY OF RICHMOND

Present: Judges Beales, O'Brien and Ortiz

Argued at Richmond, Virginia

Opinion Issued July 14, 2026[*]

**FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND**
Jacqueline S. McClenney, Judge

Richard T. Pledger (Wright, Constable & Skeen, LLP, on briefs), for appellant.

Flora T. Hezel, Senior Assistant Attorney General (Jason S. Miyares,[1] Attorney General; Steven G. Popps, Chief Deputy Attorney General; Leslie A.T. Haley, Deputy Attorney General, on brief), for appellee.

Amicus Curiae: Virginia Conference of Commissioners of Accounts (John K. Cottrell; Cottrell Fletcher & Cottrell PC, on brief), for appellee.

## MEMORANDUM OPINION BY
## <u>JUDGE RANDOLPH A. BEALES</u>

Western Surety Company ("Western Surety") appeals the Circuit Court of the City of Richmond's decision granting Kimberly Pinchbeck, the Commissioner of Accounts for the circuit court, the ability to recover her fees from fiduciary bonds that were secured by Western Surety. Western Surety argues that the circuit court erred when it found Western Surety liable

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

under the fiduciary bonds for Commissioner Pinchbeck's costs and fees and that Commissioner Pinchbeck's fees were unreasonable.

BACKGROUND

Bonnie Castro qualified as guardian and conservator of the assets of Agenor Castro and Rosa Castro[2] on June 4, 2021. To become guardian and conservator of the estates, Bonnie Castro "entered into and acknowledged a bond as Guardian in the penalty of One Thousand Dollars, payable and conditioned according to law, but without surety." She also "together with Western Surety Company, her surety, . . . entered into and acknowledged a bond as Conservator in the penalty of One Hundred Twenty Seven Thousand Dollars." Also on June 4, 2021, Western Surety and Bonnie Castro signed a bond agreement for each of the estates that were both in the amount of $127,000.

On September 1, 2021, Kimberly Pinchbeck—the Commissioner of Accounts in the Circuit Court of the City of Richmond—filed a written report with the circuit court that outlined an apparent course of self-dealing by Bonnie Castro. On December 16, 2021, Commissioner Pinchbeck issued a summons to Bonnie Castro requiring that Castro file with Pinchbeck

> a **SETTLEMENT OF ACCOUNTS** of all money and other property which you, as **Conservator** have received or become chargeable with, or have disbursed, since your qualification, or since the date of your last account, in proper form and with supporting documentation, as required by Section 64.2-1304, et seq., of the Code of Virginia of 1950, as amended.

(Emphases in original). The summons stated that if Bonnie Castro did not provide Commissioner Pinchbeck with the settlement of accounts within 30 days "after the date this summons was served on you," then Bonnie Castro's failure to file the settlement of accounts would "be reported to the Court as a basis for further proceedings authorized and directed by

---

[2] The record also refers to Rosa Castro as "Rose Castro."

Section 64.2-1215." On February 16, 2022, after Bonnie Castro apparently failed to file the settlement of accounts, the circuit court issued a show cause order requiring Bonnie Castro to appear before the court to explain "why the fines authorized under § 64.2-1216 of the Code of Virginia, 1950, as amended, or other procedures under said Section, shall not be imposed upon her."

On January 18, 2022, Commissioner Pinchbeck filed with the circuit court a "Petition by Commissioner of Accounts for Forfeiture of Bond and Removal of Guardian and Conservator." Following an April 5, 2022 hearing, the circuit court entered an order removing Bonnie Castro as the guardian and conservator of Agenor and Rosa Castro. Among other things, that order stated "that the Commissioner of Accounts shall recover her fees, costs and expenses, including fi[l]ing fees, private process service fees, attorney's fees, and any other costs or expenses incurred herein, such amount to be determined at a later date." The court then continued the case "for proof of damages and costs for which Bonnie Castro and her surety may stand liable, if any."

On March 10, 2023, Commissioner Pinchbeck filed a memorandum in support of "her request for bond forfeiture on the principal, Bonnie Castro and Western Surety Company, as surety." On March 22, 2023, Western Surety filed a brief that, among other things, opposed Commissioner Pinchbeck's request that she be reimbursed for her own fees by forfeiture of the bonds at issue. Following several continuances, the circuit court entered an order on July 16, 2024 forfeiting the bond for Agenor Castro in the amount of $68,036.12 and forfeiting the bond for Rosa Castro in the amount of $53,491.47. However, the circuit court continued the question of whether the bonds should also be forfeited to reimburse Commissioner Pinchbeck for her fees.[3]

---

[3] The circuit court also continued the question of whether the bonds should be forfeited to reimburse the successor conservator of Agenor and Rosa Castro.

On August 27, 2024, the parties met for a hearing to consider, among other things, Commissioner Pinchbeck's request to have her fees reimbursed by forfeiture of the fiduciary bonds. At the end of the hearing, the circuit court stated that it would "go back and review the arguments and the documents that" the parties had submitted and that it would "have a decision to you, within two weeks." On September 6, 2024, the circuit court entered an order denying Commissioner Pinchbeck's request. That order stated, "Bonnie Castro shall be held personally liable for any amounts due and owing to the estate of Agenor and/or Rosa Castro" and ruled that Commissioner Pinchbeck's "request[] for her fees, costs and expenses to be paid from the Fiduciary Bond of Agenor Castro and/or Rosa Castro is **DENIED**." (Emphasis in original).

On September 17, 2024, Commissioner Pinchbeck filed a motion with the circuit court asking the court to reconsider its decision denying her request. On September 23, 2024, Commissioner Pinchbeck, by counsel, filed a "Motion to Suspend Finality of Order Dated September 6, 2024." In that motion, Commissioner Pinchbeck explained that she did not receive a copy of the circuit court's September 6, 2024 order "until September 16, 2024 - leaving little time for the Commissioner to seek reconsideration by this Court . . . and virtually no time for the notation of an appeal, if the Commissioner's Motion for Reconsideration is denied." Commissioner Pinchbeck also provided the trial judge a proposed order on September 23, 2024 that would have suspended the September 6, 2024 order.

The parties were before the circuit court again at a hearing on September 24, 2024 to consider the Commissioner's motions. During the hearing, the circuit court stated that its "order was entered September 6th. 21 days is to September 27th. The only thing at this point I can do

is suspend my order pending consideration of the motion to reconsider."[4]  The circuit court then explained that it would "enter an order suspending my September 6th order" so that the court would have "an opportunity to hear from the parties on the motion to reconsider."  Counsel for Commissioner Pinchbeck then notified the circuit court of her proposed order "suspending the finality" of the September 6, 2024 order.  The circuit court thanked counsel for the draft order suspending the September 6, 2024 order.  However, this order was apparently never entered.[5]

On October 1, 2024, the circuit court entered a continuance order that seemingly tried to vacate its September 6, 2024 order and suspended that order "to allow for the Court to hear arguments on the Commissioner's Motion for Reconsideration at the next hearing."  In a footnote to this October 1, 2024 order, the circuit court stated that it "made its ruling vacating the September 6, 2024 Order on September 24, 2024 to avoid losing jurisdiction pursuant to Rule 1:1 of the Rules of the Supreme Court of Virginia."  On December 13, 2024, the circuit court entered an order (1) granting Commissioner Pinchbeck's motion to reconsider and (2) forfeiting the fiduciary bonds to reimburse Commissioner Pinchbeck for the fees that she incurred prosecuting the case against Bonnie Castro.  Western Surety filed a motion objecting to the circuit court's decision on January 2, 2025.  On January 10, 2025, Western Surety filed its notice of appeal in the circuit court.

On April 14, 2026, the parties appeared before this Court for oral argument on Western Surety's appeal.  At the conclusion of oral argument, this Court directed the parties to provide

---

[4] Rule 1:1 states, "All final judgments, orders, and decrees, irrespective of terms of court, remain under the control of the trial court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."  Rule 1:1(a).

[5] At the end of the hearing, Commissioner Pinchbeck stated that she had "a couple of other copies of the -- of the order" but the circuit court stated that it was "going to give this back to you because I've handwritten on it" so that "you all can take it downstairs."  The circuit court also stated, "I'll actually give this to you all to be filed."

supplemental briefing. This Court asked the parties to address whether they could "find anything that was issued by the court" after "the September 6, 2024 order that would provide any further information to us" on whether the circuit court entered an order suspending the September 6, 2024 order until October 1, 2024 (which was "after September 27th, the last day that" the circuit court could suspend the September 6, 2024 order under Rule 1:1).[6] This Court also asked the parties to address whether there was "anything else that remained to be done in the September 6, 2024 order so that perhaps it was not a final order actually?" While both parties filed supplemental briefs, neither was able to locate an order entered by the circuit court within 21 days of the September 6, 2024 order that suspended or otherwise modified the September 6, 2024 order. However, counsel for Commissioner Pinchbeck argued in her supplemental brief that the September 6, 2024 order was not a final order because it did not state whether the fees sought by the Commissioner were reasonable or necessary and because it did not clarify what amounts were due or owed by Bonnie Castro to the Commissioner.[7]

ANALYSIS

"All final judgments, orders, and decrees, irrespective of terms of court, remain under the control of the trial court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Rule 1:1(a).

> Unless otherwise provided by rule or statute, a judgment, order, or
> decree is final if it disposes of the entire matter before the court,

---

[6] The circuit court did issue another order on September 30, 2024, which did not actually state that it was suspending the September 6, 2024 order. Regardless, that order was also entered more than 21 days after the September 6, 2024 order so it was also void because the circuit court had lost jurisdiction to enter it.

[7] Counsel for Commissioner Pinchbeck also argues in her supplemental briefing that the September 6, 2024 order did not address a motion entered by Agenor and Rosa Castro's new conservator requesting an additional forfeiture of the fiduciary bonds at issue. However, the September 6, 2024 order clearly did address the new conservator's motion since it ordered "that an additional forfeiture from Western Surety shall be paid" to the new conservator in the amount of $21,907.50.

- 6 -

including all claim(s) and all cause(s) of action against all parties, gives all the relief contemplated, and leaves nothing to be done by the court except the ministerial execution of the court's judgment, order, or decree.

Rule 1:1(b). "The Supreme Court repeatedly has emphasized that 'a court speaks only through its written orders. And, orders speak as of the day they were entered.'" *Bailey v. Commonwealth*, 73 Va. App. 250, 262 (2021) (quoting *Wagner v. Shird*, 257 Va. 584, 588 (1999)). Thus, when "determining whether a circuit court retains jurisdiction over a matter when it issues a ruling, the critical event is the circuit court's entry of a written order and not any pronouncements the circuit court may make from the bench." *Id.* at 261-62. In addition, the Supreme Court has frequently said that "a court always has jurisdiction to determine whether it has subject matter jurisdiction," as well as to determine whether a lower court had subject matter jurisdiction, and "the lack of subject matter jurisdiction can be raised at any time in the proceedings, even for the first time on appeal by the court sua sponte." *Watson v. Commonwealth*, 297 Va. 347, 352 (2019) (quoting *Morrison v. Bestler*, 239 Va. 166, 170 (1990)).

"Neither the filing of post-trial or post-judgment motions, nor the court's taking such motions under consideration, nor the pendency of such motions on the twenty-first day after final judgment, is sufficient to toll or extend the running of the 21-day period prescribed by Rule 1:1. . . ." *Sch. Bd. of the City of Lynchburg v. Caudill Rowlett Scott, Inc.*, 237 Va. 550, 556 (1989) (first citing *Harvey v. Telephone Co.*, 198 Va. 213, 218 (1956); then citing *Lyle v. Ekleberry*, 209 Va. 349, 350-51 (1968); and then citing *Smith v. Commonwealth*, 207 Va. 459, 466-67 (1966)). *See also James v. James*, 263 Va. 474, 482-83 (2002) (same). Therefore, "the pendency of [a party's] motion for reconsideration, and the subsequent proceedings thereon, have no effect on the outcome." *Caudill Rowlett Scott, Inc.*, 237 Va. at 556.

"A final order is one which 'disposes of the entire action and leaves nothing to be done except the ministerial superintendence of execution of the judgment.'" *Kosko v. Ramser*, 299 Va. 684, 687 (2021) (quoting *Super Fresh Food Mkts. of Va., Inc. v. Ruffin*, 263 Va. 555, 560 (2002)). *See also Daniels v. Truck & Equip. Corp.*, 205 Va. 579, 585 (1964) (quoting *Marchant & Taylor v. Mathews County*, 139 Va. 723, 734 (1924), for the same proposition). "The filing of ancillary motions for the recovery of costs or the filing of other post-trial motions does not suddenly transform an otherwise final order into a nonfinal order." *Kosko*, 299 Va. at 689. To hold otherwise would mean that "anytime a litigant seeks other kinds of recoverable costs, or for that matter files any post-trial motion, there would, by definition, remain something to be done. Cases could be placed on indefinite hold by the filing of post-trial motions. Such an approach has little to commend it." *Id.* Thus, in *Kosko*, the Supreme Court ruled that the circuit court's order awarding costs to the defendants "was void because it was entered more than twenty-one days following entry of the" final order even though the circuit court "stated from the bench on the twentieth day that it was awarding costs to the defendants." *Id.*

Here, following an April 5, 2022 hearing, the circuit court entered an order that (1) adopted Commissioner Pinchbeck's recommendation to remove Bonnie Castro as guardian and conservator and (2) ruled that Commissioner Pinchbeck "shall recover her fees, costs and expenses, including fi[l]ing fees, private process service fees, attorney's fees, and any other costs or expenses incurred herein, such amount to be determined at a later date." Thus, when the circuit court ruled on September 6 that "Bonnie Castro shall be held personally liable for any amounts due and owing to the estate of Agenor and/or Rosa Castro" and denied Commissioner Pinchbeck's "request[] for her fees, costs and expenses to be paid from the Fiduciary Bond of Agenor Castro and/or Rosa Castro,"—but also ordered that Commissioner Pinchbeck could not recover those fees from Western Surety—the only thing left for the circuit court to do was to

determine the exact amount of costs and fees that Pinchbeck could recover from Bonnie Castro. Therefore, because "[t]he filing of ancillary motions for the recovery of costs . . . does not suddenly transform an otherwise final order into a nonfinal order," the circuit court's September 6, 2024 order was final. *Kosko*, 299 Va. at 689. Thus, despite the arguments made by Commissioner Pinchbeck's counsel in the supplemental briefing that she filed with this Court following oral argument on April 14, 2026, we find that the circuit court had lost jurisdiction when it issued all of its subsequent orders to the September 6, 2024 order in this matter—each of which was entered after September 27, 2024.

Indeed, both Commissioner Pinchbeck and the circuit court treated the September 6 order as if it were final in the days after the circuit court entered that order. Shortly after she received a copy of the September 6 order, Commissioner Pinchbeck filed a motion for reconsideration of the September 6 order and a "Motion to Suspend Finality of Order Dated September 6, 2024." Commissioner Pinchbeck's motion explained that she would have "virtually no time for the notation of an appeal" if the circuit court were to deny her motion for reconsideration of the September 6 order. At the September 24, 2024 hearing where the circuit court considered Commissioner Pinchbeck's motion, the circuit court stated that "[t]he only thing at this point I can do is suspend my order pending consideration of the motion to reconsider" because the circuit court only had until September 27, 2024 to amend the September 6 order.[8] Then, in its October 1, 2024 order, the circuit court actually explained that it "made its ruling vacating the September 6, 2024 Order on September 24, 2024 to avoid losing jurisdiction pursuant to Rule 1:1 of the Rules of the Supreme Court of Virginia." It would not have lost jurisdiction if the September 6, 2024 order had not been a final order, including in the circuit court's mind as well.

---

[8] The circuit court judge stated, "Like, as it stands now, my order was entered September 6th. 21 days is to September 27th. The only thing at this point I can do is suspend my order pending consideration of the motion to reconsider."

Therefore, because the September 6 order was treated as a final order by the circuit court and the parties—and because the September 6 order left nothing for the circuit court to do other than to determine the exact amount of costs and fees that Commissioner Pinchbeck was to recover—that September 6, 2024 order was final (and appealable).

Because the September 6 order was a final order and because the circuit court did not subsequently, within the next 21 days, enter a written order staying, vacating, or otherwise modifying that order, the circuit court lost jurisdiction over this matter on September 27, 2024. As noted *supra*, the Supreme Court has repeatedly reiterated that a court speaks only through its *written* orders. *See, e.g.*, *Wagner*, 257 Va. at 586; *Kosko*, 299 Va. at 689; *Jefferson v. Commonwealth*, 298 Va. 473, 477 (2020); *Caudill Rowlett Scott, Inc.*, 237 Va. at 556; *Lyle*, 209 Va. 350-51; *Berean Law Grp., P.C. v. Cox*, 259 Va. 622, 626 (2000); *Austin v. Consolidation Coal Co.*, 256 Va. 78, 81 (1998); *Walton v. Commonwealth*, 256 Va. 85, 94 (1998); *Davis v. Mullins*, 251 Va. 141, 148-49 (1996); *Town of Front Royal v. Front Royal & Warren County Indus. Park Corp.*, 248 Va. 581, 586 (1994); *Robertson v. Superintendent of the Wise Corr. Unit*, 248 Va. 232, 235 n.* (1994). The fact that the circuit court may have intended to stay the September 6 order is of no consequence if it did not enter a written order doing so within the 21 days before it lost jurisdiction under Rule 1:1. "Although a seemingly harsh result, binding Supreme Court precedent dictates this conclusion." *Bailey*, 73 Va. App. at 262 (citing the Supreme Court's opinion in *Wagner v. Shird*, in which the losing party "filed a post-trial motion, the circuit court conducted a hearing on that motion, and the circuit court orally announced a ruling on the post-trial motion from the bench" before losing jurisdiction under Rule 1:1, yet "[t]he Supreme Court held that the failure of the circuit court to enter a written order while it retained jurisdiction rendered its ruling on the post-trial motion 'a nullity'" (quoting *Wagner*, 257 Va. at 586)). Therefore, as required by longstanding Supreme Court precedent, we find that the

circuit court lacked jurisdiction to enter the December 13, 2024 order that Western Surety appeals from in this case because the final order issued by the circuit court in this matter was the September 6, 2024 order. We therefore remand this matter to the circuit court for it to re-enter the September 6, 2024 order in this matter and to vacate all the orders it entered in this matter after September 27, 2024, including the December 13, 2024 order, from which Western Surety appealed.

CONCLUSION

In short, the September 6, 2024 order was a final appealable order because it left nothing for the circuit court to do other than to determine the exact amount of costs and fees owed to Commissioner Pinchbeck, and it also found that Western Surety could not be required to pay those costs and fees as the surety in this matter. While the circuit court expressed an intention from the bench during the September 24, 2024 hearing to suspend the finality of the September 6, 2024 order, the circuit court did not enter another written order doing so until more than 21 days after the September 6 order, at which time it had lost jurisdiction to do so. Therefore, pursuant to Rule 1:1, the circuit court lost jurisdiction over this matter on September 27, 2024, and orders entered after that date are void, including the December 13, 2024 order appealed from here. We thus remand this matter to the circuit court for it to re-enter its September 6, 2024 order as the final order in the case, for it to vacate all of the orders it entered in this matter after September 27, 2024—including the December 13, 2024 order from which Western Surety appealed, and for it to conduct any further necessary proceedings consistent with this opinion.

*Remanded and vacated.*